UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                      NOT FOR PUBLICATION
LEE R. SEWELL,
                                                                      MEMORANDUM
                 Plaintiff,                                AND ORDER
  -against-
                                                                      10-CV-5039 (JG)
THE CITY OF NEW YORK, PATROL OFFICER
M. GIGLIELLO, PATROL OFFICER M. CUETO,

                 Defendants.
-----------------------------------------------------------------x

A P P E A R A N C E S:

    Lee R. Sewell
        333 Thomas S. Boyland St.
        Apt. #2B
        Brooklyn, New York 11233
        *Plaintiff,* pro se

    MICHAEL A. CARDOZO
        Corporation Counsel of the City of New York
        100 Church Street
        New York, New York 10007
    By:   Joseph A. Marutollo
        Morgan D. Kunz
        *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

        On October 28, 2010, plaintiff Lee R. Sewell commenced this *pro se* action against the New York City Police Department ("NYPD") alleging various civil rights violations. On November 4, 2010, I dismissed the action because the NYPD is not amenable to suit, but gave Sewell 30 days to amend his complaint. He did so on November 22, 2010, alleging that the City of New York, as well as police officers Marc Gigliello and Miguel Cueto, violated his civil rights under 42 U.S.C. § 1983. The defendants have moved to dismiss the amended complaint. For the reasons discussed below, the motion is granted.

## BACKGROUND

A.  *The Neighbor's Report, the Arrest, and Sewell's Conviction*[1]

On January 22, 2008, one of Sewell's neighbors perceived loud noises and the smell of marijuana emanating from Sewell's apartment. He knocked on Sewell's door to confront him, and was met by Sewell, who was holding a handgun. Sewell pointed the handgun at the neighbor and said, "There is going to be some shit." The neighbor returned to his own apartment and called the police, informing them of what he had seen and heard. On February 1, 2008, the neighbor went to the precinct to report the incident. He filed an incident report and returned home.

One week later, on February 8, 2008, the neighbor returned to the precinct to speak further with the police regarding the January 22 incident. He spoke to Officer Cueto, informing him that he had knocked on Sewell's door and been menaced with a firearm, after which he had filed a criminal complaint against Sewell at the precinct. Officer Cueto consulted with his partner, Officer Gigliello, and the officers went with the neighbor to investigate the neighbor's complaint.

When the officers arrived at Sewell's apartment, Sewell opened the door. The neighbor pointed at Sewell, stating in Spanish, "That's him."[2] The officers requested permission to enter the apartment, which Sewell apparently granted. The officers asked Sewell if there was a gun in the apartment, and he responded that there was. Under a pillow in the bedroom the officers found a loaded handgun. Sewell was then placed under arrest and charged with two

---

[1] These facts are drawn from the amended complaint, the numerous exhibits attached to the amended complaint, and Sewell's statements at the May 3, 2011 oral argument.
[2] At oral argument Sewell disputed this identification, but he does not dispute that he was the neighbor about whom complaints were made to the arresting officers.

2

counts of menacing, one count of harassment, and two counts of illegal possession of a firearm. One week later he was released on bond.

Sewell pled guilty on October 14, 2010 to criminal possession of a weapon in the fourth degree and was sentenced to time served. That same day he signed a waiver of appeal, indicating that as a condition of being permitted to plead guilty he would waive his right to appeal from his conviction and sentence.

B.  *This Action*

On November 22, 2010, Sewell filed his amended complaint, the substance of which reads in its entirety:

> Officers [Cueto and Gigliello] from the 73rd Pct. Acting within the official capacity as police officers for The City Of New York, arrested and detained the plaintiff without probable cause, It has been sworn and testified to in open court(s) that a true and verifiable "open 61" was the basis of the plaintiff's arrest on Feb. 8th, 2008, it has also has been sworn and testified to an alleged 911 call, Neither of which have ever been produced. Furthermore, the plaintiff can prove via evidence, that the officer's involved masked their reason to approach the plaintiff, by stating they were responding to a domestic violence call, further evidence will show that questions within the police dept concerning this matter were never addressed, and/or covered up. Thereby, violating plaintiff's rights to liberty, due process, false arrest, false imprisonment.

Sewell has attached to the amended complaint various documents from the state court proceedings, including police forms and transcripts of the testimony given by the individual defendants during the pre-plea proceedings in the state courts.

Reading the complaint liberally, as I must, I conclude that Sewell intends to bring claims of false imprisonment and malicious prosecution under New York State law, as well as false arrest and malicious prosecution under federal law. The defendants moved to dismiss, and I heard oral argument on May 3, 2011. I now dismiss the case in its entirety.

DISCUSSION

A.  *The Motion to Dismiss Standard*

In order to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating Sewell's claims, I construe the complaint liberally, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving parties, and bearing in mind that a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly* . . . we remain obligated to construe a *pro se* complaint liberally." (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). Although the complaint must be supported by more than "mere conclusory statements," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), it need not provide "detailed factual allegations." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, a court may examine (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as exhibits or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

B.  *The Claims Against Officers Cueto and Gigliello*

 1.  *False Imprisonment and False Arrest*

Sewell alleges that he suffered false imprisonment and/or false arrest when Officers Cueto and Gigliello arrested him at his home. Under New York law, a claim of false imprisonment requires a showing "that the defendant intended to confine the plaintiff, that the

plaintiff was conscious of the confinement and did not consent to the confinement, and that the confinement was not otherwise privileged." *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 85, (2001). The elements of false arrest under 42 U.S.C. § 1983 are drawn from the law of the state in which the arrest took place. *See Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007). Under both New York and federal law, "the existence of probable cause is an absolute defense to a false arrest claim." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010) (citations omitted).

It is indisputable based on the materials Sewell has attached to his amended complaint, documents in the public record, and Sewell's own statements at oral argument that the officers had probable cause to arrest him. "In general, probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of N.Y.*, 879 F.2d 1025, 1032 (2d Cir. 1989). The undisputed facts are that Sewell's neighbor went to the police and told them that on January 22, 2008, Sewell pointed a handgun at him. That complaint established probable cause to arrest Sewell,[3] *see Krause v.*

---

[3] Even if the neighbor was lying when he reported the incident to the police, as Sewell stated at oral argument, that fact by itself does not undermine the probable cause to arrest Sewell. *See Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) (once police officers "possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence"); *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("The veracity of citizen complain[an]ts who are the victims of the very crime they report to the police is assumed."). Similarly, assuming the truth of Sewell's claim that he denied at the scene his neighbor's allegations, that also does not render the officers' arrest unlawful. It is hardly uncommon for people suspected of crimes to deny their involvement. When they do, police officers who have probable cause to arrest are not required to adjudicate disputed issues of fact on the spot, nor are they required to walk away. Once a police officer has probable cause, he need not explore "every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y. City Trans. Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). A suspect's denial of his suspicious behavior is a factor the officer may consider in determining whether probable cause exists, but it does not require the officer to forego arrest if the facts otherwise establish probable cause. *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). To hold otherwise would allow suspects to avoid arrest simply by denying guilt. *Id.* The function of law enforcement officers "is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause*, 887 F.2d 362, 372 (2d Cir. 1989). Accordingly, they have no duty to investigate an exculpatory statement of the accused, and their refusal to do so does not defeat probable cause.

5

*Bennett*, 887 F.2d 362, 370 (2d Cir. 1989), and constitutes an absolute defense against his false arrest and false imprisonment claims. Those claims are therefore dismissed.

      b.    *Malicious Prosecution*

In order for Sewell to prevail on his § 1983 claim for malicious prosecution, he must show (1) the initiation or continuation of a criminal proceeding against him; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendants' actions. *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002); *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). Sewell's claim fails because the prosecution did not terminate in his favor: he pled guilty and did not appeal. Also, as discussed above, Sewell fails to plead a lack of probable cause. Finally, even reading his complaint liberally, Sewell has not alleged any facts suggesting that the officers bore malice against him. The claim of malicious prosecution is therefore dismissed.[4]

## CONCLUSION

The motion to dismiss is granted in its entirety.

So ordered.

_____
JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
       May 9, 2011

---

*Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991); *Dukes v. City of N.Y.*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995); *Grant v. City of N.Y.,* 848 F. Supp. 1131, 1135 (S.D.N.Y. 1994).

[4] Since municipal liability cannot be established in the absence of a violation of Sewell's federal rights, his claims against New York City are dismissed as well.